```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

```
FRANK P. BOGDAN,

                         Plaintiff,
            -vs-                            No. 1:13-CV-00875 (MAT)
                                            DECISION AND ORDER
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                         Defendant.
```
___

### I. Introduction

Represented by counsel, Frank P. Bogdan ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted and the matter is reversed and remanded solely for the calculation and payment of benefits.

**Procedural History**

The record reveals that in March 2010, plaintiff (d/o/b November 9, 1966) applied for SSI.[1] After his application was

___

[1] As the ALJ's decision noted, plaintiff filed several prior applications. In September 2002, plaintiff applied for disability insurance benefits ("DIB") and SSI, both of which applications were denied in November 2002 without further appeal. A February 2007 application for DIB was dismissed on September 15, 2009 due to plaintiff's failure to appear for a hearing. Plaintiff also filed a DIB

denied, plaintiff requested a hearing, which was held before administrative law judge Timothy M. McGuan ("the ALJ") on October 26, 2011. The ALJ issued an unfavorable decision on November 18, 2011. The Appeals Council denied review of that decision and this timely action followed.

**III. The ALJ's Decision**

At step one of the five-step sequential evaluation, see 20 C.F.R. § 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since March 23, 2010, the application date. At step two, the ALJ found that plaintiff suffered from bipolar disorder and anxiety, impairments which he considered severe. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. The ALJ found that plaintiff had mild restrictions in activities of daily living ("ADLs"), moderate restrictions in social functioning and concentration, persistence or pace, and no prior episodes of decompensation.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional

---

application in March 2010, which was denied because plaintiff's previous claim was denied after his date last insured. Therefore, the only application pending before the ALJ at the time of his decision was the March 2010 application for SSI.

limitations: "he can occasionally interact with the public and frequently interact with co-workers and supervisors[, and] can occasionally understand, remember, and carry out complex and detailed tasks." T. 26. At step four, the ALJ found that plaintiff was unable to perform past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

**IV.  Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff contends that the ALJ erroneously weighed the medical source opinions, which included a September 2010 opinion from plaintiff's treating psychiatrist Dr. John Napoli; a June 2010 consulting psychiatric examination from state agency psychologist Dr. Thomas Ryan; and a psychiatric review technique questionnaire and mental RFC completed by reviewing state agency psychologist

Dr. Hillary Tzetzo. The ALJ gave no weight to Dr. Napoli's opinion, finding that it was "inconsistent with treatment notes provided by his office showing that [plaintiff] was doing well on medications and his bipolar disorder was stable." T. 33. The ALJ gave little weight to Dr. Ryan's opinion "because [he] only examined [plaintiff] on one occasion." Id. The ALJ gave "[t]he greatest weight . . . to the opinion of the review psychiatrist, given [her] programmatic expertise, as well as to the overall objective record." T. 33.

Initially, the Court finds that the ALJ's assignment of the greatest weight to the opinion of the state agency reviewing psychologist, over the opinions of both the consulting and treating sources, constituted reversible error. See Maldonado v. Comm'r of Soc. Sec., 2014 WL 537564, *15 (E.D.N.Y. Feb. 10, 2014) ("[I]t is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient. Accordingly, 'the conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little, if any, weight.'").

The treating physician rule "recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing." Santiago v.

4

Barnhart, 441 F. Supp. 2d 620, 629 (S.D.N.Y. 2006) (citing Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993) (noting that regulations give deference to treating physicians' opinions because "opinions based on a patient-physician relationship are more reliable than opinions based . . . solely on an examination for purposes of the disability proceedings themselves")). As the Santiago court recognized, the treating physician rule is "even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time. Thus, while the ALJ can consider the opinions of [consulting medical sources], absent more compelling evidence[,] their opinions should not be given controlling weight over those of [a treating psychiatrist]." 441 F. Supp. 2d at 629.

Dr. Napoli's treating source opinion noted that plaintiff, who he had treated since July 2006, carried a diagnosis of bipolar disorder, which resulted in sleep disturbances, psychomotor agitation, feelings of guilt or worthlessness, difficulty concentrating, thoughts of suicide, hyperactivity, pressured speech, flight of ideas, inflated self-esteem, decreased need for sleep, and easy distractibility. Dr. Napoli opined that plaintiff was markedly limited in ADLs and extremely limited in social functioning. According to Dr. Napoli, plaintiff had marked or extreme limitations in a variety of areas of functioning, including making simple work-related decisions, maintaining a normal work

schedule, and accepting instructions and responding appropriately to criticism from supervisors. Dr. Napoli stated that plaintiff was a "master plumber and loves to work"; however, he could not "maintain normal work schedules." T. 543.

In his June 2010 opinion, Dr. Ryan noted that on mental status examination ("MSE") plaintiff exhibited "somewhat poor" insight and judgment, but otherwise the examination was normal. T. 369. Dr. Ryan opined that plaintiff could "follow and understand simple directions, perform simple tasks, maintain attention and concentration, and maintain a regular schedule." Id. Dr. Ryan opined that plaintiff "may have some difficulty with complex tasks," his "[d]ecision making [was] impaired at times," and he had "moderate limitation in his ability to relate adequately with others and deal with stress." Id.

The record reveals that plaintiff had a longitudinal history of psychiatric treatment prior to the relevant time period, which began on the application date of March 23, 2010. In January 2006, plaintiff was admitted to Buffalo General Hospital for three days in connection with suicidal ideation and depression. Hospital records indicated that plaintiff had multiple previous hospital admissions. Plaintiff was diagnosed with depression, not otherwise specified ("NOS") and polysubstance dependence. In September 2006, treatment notes from Monsignor Carr Institute indicated that plaintiff showed signs of bipolar disorder. Throughout plaintiff's

treatment prior to and during the relevant time period, plaintiff was prescribed various dosages of Seroquel (an antipsychotic), Depakote (an anticonvulsant and mood stabilizer), Klonopin (a sedative), and Lexapro (an antidepressant), to treat symptoms of bipolar disorder. Toward the end of the relevant time period, plaintiff's primary medications were Klonopin and Lexapro. Treatment notes also reflect that plaintiff had difficulty with medication compliance; for example, in July 2007 it was noted that plaintiff stopped taking his Klonopin stating that he was "going to try and cope on his own." T. 340.

Plaintiff's primary therapist at Monsignor Carr was Henry Kahlen, LMSW. LMSW Kahlen met with plaintiff regularly, approximately once every two weeks, during the relevant time period. LMSW Kahlen recorded that plaintiff had ongoing issues with depression and anxiety, and he was managed on medications prescribed by Dr. Napoli. LMSW Kahlen noted that plaintiff would likely "always need" medication due to his primary diagnosis of bipolar disorder. T. 240.

The Court agrees with plaintiff that the ALJ did not properly apply the treating physician rule to Dr. Napoli's opinion. The regulations provide that when a treating source's opinion is rejected, the ALJ must consider various factors including (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the

treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; and (iv) whether the opinion is from a specialist. See 20 C.F.R. § 404.1527(c). The ALJ here did not consider these factors, instead simply stating that he accorded no weight to Dr. Napoli's opinion "because it [was] inconsistent with treatment notes provided by his office showing that [plaintiff] was doing well on medications and his bipolar disorder was stable." T. 33.

An assessment of the factors, however, does not support the ALJ's rejection of Dr. Napoli's opinion. Dr. Napoli had a long treatment relationship with plaintiff, and he oversaw plaintiff's medication management and counseling with LMSW Kahlen at Monsignor Carr. He was a specialist in psychiatry, and his opinion was consistent with the record as a whole. Although the record does indicate that plaintiff's condition improved with treatment, the record does not support the ALJ's conclusion that such improvement in treatment translated into an ability to perform work on a full-time basis with the limited restrictions assessed in the ALJ's RFC finding. See SSR 96-8p (defining work on a "regular and continuing basis" as comprising "8 hours a day, for 5 days a week, or an equivalent work schedule"). Dr. Napoli's opinion that plaintiff was extremely limited in social functioning and markedly limited in activities of daily living is supported by the record, which establishes that throughout the time period relevant to his claim,

plaintiff suffered from bipolar disorder, attended regular treatment, and was prescribed psychotropic medications for his symptoms. Because Dr. Napoli's opinion was supported by plaintiff's record of treatment, the ALJ should have given the opinion controlling weight under the treating physician rule.

Given the controlling weight to which it was entitled, Dr. Napoli's opinion establishes that plaintiff's inability to sustain full-time work renders him disabled under the regulations. See SSR 96-8p. The Court notes that the standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, see Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, see Butts v. Barnhart, 388 F.3d 377, 385–86 (2d Cir. 2004). That standard has been met in this case. Because additional proceedings would serve no purpose and would lead to further delay of plaintiff's claim which has been pending for over six years, remand solely for the calculation and payment of benefits is warranted. See McClain v. Barnhart, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (recognizing "delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability").

**V.      Conclusion**

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings (Doc. 14) is denied and plaintiff's motion (Doc. 15) is granted. This matter is reversed and remanded solely for the calculation and payment of benefits. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:     April 11, 2016
           Rochester, New York.